**STATE OF WEST VIRGINIA**

**FILED**

**March 16, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.G.-N. and A.N.-1**

**No. 20-0382** (Cabell County 17-JA-100 and 18-JA-143)


**MEMORANDUM DECISION**


Petitioner Mother A.N.-2, by counsel Paula Harbour, appeals the Circuit Court of Cabell County's March 12, 2020, order terminating her parental rights to J.G.-N. and A.N.-1[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Michael L. Jackson, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Melia Atwell Adkins, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and that she was prejudiced by the DHHR's untimely filing of the family case plan.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner in May of 2017, alleging that she abused drugs such that her parenting skills were impaired and that her drug abuse posed a risk to J.G.-N.'s health and safety. Specifically, the DHHR alleged that petitioner tested positive for buprenorphine, which may have contributed to J.G.-N.'s premature birth and low birth weight. The DHHR investigated the matter and indicated that petitioner evaded DHHR workers' attempts to contact her after J.G.-N.'s birth and that hospital staff reported that petitioner exhibited characteristics consistent with drug withdrawal, such as irritability and anger. The DHHR also

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we refer to them as A.N.-1 and A.N.-2, respectively, throughout this memorandum decision.

alleged that petitioner lost custody of an older child in previous abuse and neglect proceedings. Petitioner waived her preliminary hearing.

After several continuances, the adjudicatory hearing was held in January of 2018. Petitioner stipulated to engaging in substance abuse that affected her ability to parent J.G.-N. and requested a post-adjudicatory improvement period. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period. By petitioner's own admission, a multidisciplinary team ("MDT") convened a meeting on February 23, 2018, and provided petitioner the following terms and conditions for her improvement period: 1) maintain stable housing and employment; 2) submit to weekly random drug screens; 3) maintain weekly visits with the child; 4) comply with the recommendations of the parental fitness evaluation; 5) complete parenting and adult life skills classes; and 6) attend outpatient mental health counseling and Narcotics Anonymous meetings/counseling.

Petitioner submitted to a parental fitness evaluation in February of 2018. The evaluating psychologist noted that petitioner denied common shortcomings, was unwilling to admit to minor faults, and minimized the potentially negative impact of her behaviors on others. Petitioner endorsed a generally positive self-evaluation and the psychologist opined that petitioner's motivation for treatment was poor. Petitioner was extremely defensive in her responses and denied some of the issues leading to the petition's filing, calling them "lies." Petitioner conceded that she had a drug problem and that she previously developed "a $500-a-day [heroin] habit." The psychologist noted that petitioner clearly adopted an adversarial stance towards Child Protective Services ("CPS"). Lastly, the psychologist noted that petitioner's intellectual capabilities appeared unlikely to be a significant impediment to minimally adequate parenting. Given petitioner's failure to acknowledge the issues leading to the petition's filing, her defensive responses during the evaluation, and her lack of meaningful engagement in intervention, the psychologist opined that petitioner's prognosis for attaining minimally adequate parenting was poor. The psychologist gave the following recommendations: 1) attend outpatient substance abuse treatment; 2) submit to random drug screening; 3) attend weekly individual psychotherapy to address her issues with anxiety and interpersonal interaction; 4) attend a psychiatric consultation for medication management; 5) complete parenting and adult life skills classes; 6) demonstrate her ability to independently establish and maintain housing for a minimum of six months; 7) demonstrate her ability to maintain stable interpersonal relationships for a minimum of six months; 8) demonstrate her ability to establish and maintain employment for a minimum of six months; and 9) demonstrate her attachment to her child by fully complying with CPS intervention and interacting appropriately with the child during visitation.

Subsequently, petitioner gave birth to her second child, A.N.-1. In July of 2018, the DHHR filed a second petition, incorporating A.N.-1 into the proceedings. Petitioner waived her preliminary hearing on the second petition, and the matter was set for adjudication. In September of 2018, the circuit court held the adjudicatory hearing on the second petition. The circuit court adjudicated petitioner as an abusing parent and granted her another post-adjudicatory improvement period.

Thereafter, the proceedings were continued for various reasons. In July of 2019, the DHHR filed the family case plan. In November of 2019, petitioner filed a position statement with regard

to the family case plan. Petitioner stated that she had resolved the conditions of abuse raised in the petitions against her—namely, drug abuse. Petitioner stated that an MDT meeting was held in February of 2018, and she described the six terms and conditions imposed upon her by the MDT. Petitioner argued that she had maintained stable housing and employment, continuously submitted negative drug screens, and successfully completed all of her parenting and adult life skills classes. Petitioner further noted that she sought counseling for her mental health and addiction issues and attended her visits with the children. Petitioner argued that, to the extent the DHHR claimed that she had not corrected the circumstances that led to the petition's filing, she had been prejudiced by the DHHR's untimely filing of the family case plan.

The circuit court held the dispositional hearing over the course of three days throughout November of 2019, December of 2019, and January of 2020. A service provider testified that she provided petitioner with parenting and adult life skills classes. As of the dispositional hearings, the provider felt that petitioner still needed to work on issues with anger and appropriately assessing the children's medical needs. For example, petitioner threatened to sue the provider and the DHHR as recently as August of 2019. Further, at times petitioner expressed disproportionate amounts of concern for the children's normal bodily functions, but at other times denied the existence of the children's diagnosed medical conditions. The provider also opined that petitioner was unwilling to go above and beyond for the children and denied having parenting deficits. The provider stated, "[petitioner] had been doing this for two years, and I think she felt that she had learned everything." Petitioner spent many of the classes blaming her DHHR caseworker or others for her situation, and the provider testified that she frequently had to redirect petitioner to accomplish the curriculum. The provider also expressed concern over petitioner's constant complaints of being extremely tired and her refusal to take any steps to adjust her schedule accordingly.

Another service provider testified regarding petitioner's visits with the children. The provider testified that petitioner appeared to love the children and was never angry towards them but was inappropriate at times during the visits and exhibited mood swings. For example, petitioner would randomly become angry or standoffish during the visits and "channel[ed]" her mood towards the children. Further, petitioner discussed inappropriate topics with the children, including that CPS "ripped her bonding time away," that she was going to sue the DHHR, that the children would be returning to her care, and that she was going to regain custody of her oldest child.

A CPS worker testified that petitioner completed several aspects of her improvement period. The worker testified that she wanted to give petitioner "credit for overcoming her struggles with substance abuse." The worker further testified that petitioner maintained housing but struggled somewhat with maintaining employment throughout the proceedings. The worker expressed concern over petitioner's visits and interactions with the children. According to the worker, petitioner refused to have the visits in her home and insisted that they be held at the DHHR facility so that her service provider could be observed. Petitioner also failed to attend many of her scheduled visits, often attending only two out of eight scheduled visits per month. The worker opined that petitioner failed to utilize the information taught to her during parenting classes and would often force the children to sleep or attempt to continuously feed them in order to make the visits easier on her. Petitioner also lacked a bond with the children and took her personal frustrations out on them, such as cussing at them or jerking them roughly. The CPS worker opined that petitioner did not exhibit the ability to implement appropriate parenting during these frequent

displays of frustration. Given the children's vulnerability due to their medical conditions, the CPS worker felt that returning them to petitioner's care was not in their best interests. Specifically, the children required physical, occupational, speech, and developmental therapy on an extremely frequent basis. A.N.-1 was required to wear braces on her feet, and her caretakers performed exercises with her at least four times per day. The worker further opined that petitioner lacked the motivation or "behavioral protective capabilities" to care for the children. For example, petitioner complained to the worker that she was strained financially, and the worker arranged for financial assistance for housing, food, and transportation, but petitioner failed to take advantage of those opportunities. In sum, the CPS worker recommended the termination of petitioner's parental rights based upon these deficiencies.

Petitioner testified that she completed all of the requirements of her improvement plan and opined that the children should be returned to her care. Petitioner stated that she had maintained employment and housing for over two years and submitted to drug screens, all of which were negative. Petitioner denied having fallen asleep at any of her visits with the children but conceded that she did not have a good relationship with some of her service providers. Petitioner denied the issues leading to the petitions' filings and denied having stated that she did not believe the children's medical diagnoses. Petitioner's therapist and "family navigator" testified very favorably of petitioner's efforts and attitude during the proceedings. Petitioner's therapist in particular opined that she believed that petitioner was capable of parenting the children and that they should be returned to her care.

By order entered on March 12, 2020, the circuit court terminated petitioner's parental rights to the children. The circuit court explained that termination of petitioner's parental rights was not an easy decision to make as she complied with numerous aspects of her improvement period. However, petitioner failed to treat her mental health issues and failed to implement the information taught in her parenting classes. The circuit court noted that petitioner repeatedly reported that she was sleep deprived and did not sleep for days at a time. Petitioner did not seek further mental health treatment to address these issues, and her physical and mental condition affected her visitation with the children. Petitioner lacked "consistent appropriate visitation sessions" with the children, struggled to care for both children during the visits, and failed to acknowledge or accept the children's medical diagnoses. The circuit court further noted that petitioner's mood during the visits with the children fluctuated greatly from becoming very angry, short tempered, and annoyed, to being overly affectionate with the children. The circuit court found that petitioner did not have a bond with the children and cancelled several visits.

After thorough consideration, the circuit court found that petitioner failed to remedy the conditions of abuse and/or neglect that led to the children's removal. While petitioner maintained sobriety during the proceedings, she did not address other aspects of her improvement period and the circuit court opined that reunification with petitioner would subject the children to continued abuse and/or neglect and even greater harm. The circuit court considered whether petitioner internalized the material taught to her through services but noted that it was repeatedly advised of concerns with petitioner's mental health treatment and the lack of appropriate visits. Indeed, petitioner never had one full day of visitation with the children as she never demonstrated the ability to be left alone with the children, even for a trial period. Simply put, petitioner failed to demonstrate sufficient improvement to warrant the return of the children to her care. The circuit

4

court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future as she demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with help. Namely, petitioner failed to respond to or follow through with services designed to reduce or prevent the abuse or neglect of the children. Petitioner appeals the March 12, 2020, dispositional order terminating her parental rights to the children.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that she was prejudiced by the DHHR's failure to timely file a family case plan. Aside from providing a single sentence that the DHHR untimely filed a case plan and citing to the requirement that the DHHR file a case plan pursuant to West Virginia Code § 49-4-604(a), petitioner provides the following argument only:

> West Virginia Code § 49-4-604 required the case plan to "clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving, or lessening these problems[.]" *In re: Desarae M.*, 214 W.Va. 657, 59[1] S.E.2d 215 (2003). The Court held in, *In re: K.B. and J.H.*[,] No. 18-0255[,] Supreme Court of West Virginia, November 21, 2018, that the parent was prejudiced by the lack of a Family Case Plan.

With regard to family case plans, this Court has held that

> "[t]he purpose of the family case plan as set out in W.Va. Code [§] 49-6D-3(a) [now W.Va. Code § 49-4-408(a)] . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987).

---

[2]J.G.-N.'s father is deceased. A.N.-1's father voluntarily relinquished his parental rights to the child. The permanency plan for the children is adoption by their foster parents.

*Desarae M.*, 214 W. Va. at 659, 591 S.E.2d at 217, syl. pt. 2. We have also held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009).

While we note that West Virginia Code § 49-4-408(a) requires that a family case plan be filed within sixty days of the child coming into foster care or thirty days of an improvement period's inception, the Court does not find reversible error on that issue under the specific limited circumstances of this case. The record on appeal in this case is clear that petitioner participated in MDT meetings, which included the creation of a family case plan and the terms of petitioner's post-adjudicatory improvement period. Moreover, by her own admission, petitioner was aware of the goals she needed to reach as part of her case plan. In November of 2019, petitioner filed a position statement in response to the DHHR's untimely filed case plan in which she admitted that she attended the MDT meeting wherein the case plan was developed and further listed out the goals they discussed at the MDT meeting. Importantly, petitioner does not argue that the DHHR attempted to add any goals in the untimely filed case plan, which was the basis of our finding that the respondent parent had been prejudiced by the late-filed case plan in *In re K.B.*, No. 18-0255, 2018 WL 6119921 (W. Va. Nov. 21, 2018)(memorandum decision). Moreover, petitioner was also provided with the recommendations set forth in her copy of the parental fitness evaluation and was informed on the record of the steps she needed to take towards reunification. On appeal, petitioner does not allege that she was confused or not informed about what efforts she needed to undertake to achieve reunification with the children, and the record is clear that she was fully aware that she needed to correct her substance abuse and treat her mental health issues in order to achieve that goal. As such, we cannot find that the Rules of Procedure for Child Abuse and Neglect Proceedings or the related statutes have been substantially disregarded or frustrated such that vacation is warranted. Therefore, we find no reversible error in this regard.

Next, petitioner argues that the circuit court erred in terminating her parental rights. Petitioner avers that she was substantially compliant with the terms and conditions of her family case plan. Petitioner states that she maintained housing and employment; submitted to all required drug screens, all of which were negative; completed parenting and adult life skills classes; sought counseling for her mental health and addiction issues; and demonstrated attachment to her children by complying with CPS and interacting appropriately with the children during supervised visitation. As such, petitioner contends that she corrected the conditions leading to the removal of the children from her care, specifically drug abuse. Petitioner argues that the evidence presented does not support the termination of her parental rights.

6

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Those conditions also exist when the abusing parent has "not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." W. Va. Code § 49-4-604(d)(3).

Petitioner failed to demonstrate that she had the capacity to solve the problems of abuse and neglect on her own or with help and failed to follow through with rehabilitative efforts. While petitioner is correct that she substantially addressed her drug abuse, this Court has held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Moreover, "[a]lthough parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

Here, petitioner complied with services but ultimately failed to demonstrate that she implemented the material taught such that the children could be safely returned to her care. One of the issues listed by both the initial MDT and the psychologist was that petitioner needed to address her mental health issues with anxiety. Although petitioner attended counseling throughout the proceedings, she was unable to properly interact with the children during visits. Petitioner frequently became angry and yelled or cursed at the children and jerked them for age-appropriate behavior. Petitioner also expressed inordinate amounts of anxiety regarding the children's bowel movements but refused to accept their conclusive medical diagnoses. Further, petitioner was combative with the visitation supervisor and the CPS worker and demanded that visits with the children be moved to the DHHR for observation. Petitioner also complained of being tired during the visits, but testimony established that petitioner was unmotivated to make changes to her schedule in order to fix this problem. Instead, petitioner's mood varied during the visits, and she tried to force the children to sleep or fed them continuously in order to make caring for them easier.

Further, petitioner attended only a fraction of the visits she was allotted. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *Id.* at 90, n.14, 479 S.E.2d at 600, n.14 (citing *Tiffany Marie S.*, 196 W. Va. at 228, 237, 470 S.E.2d at 182, 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Petitioner's lack of interest in exercising all her visitation rights during the proceedings is especially concerning given the high level of care these children require. Evidence demonstrated that the children have in-home therapy four days a week in addition to daily exercises. The children also frequently have to travel out-of-state for medical appointments due to their conditions. At no

7

point during the proceedings did petitioner demonstrate that she was interested in or capable of providing this level of care. Lastly, we note that petitioner continued to deny the circumstances that led to the petition's filing and viewed herself as the victim in the proceedings rather than accepting responsibility for her actions. This Court has held that

> [a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made *in the context of all the circumstances* of the case to justify the return of the child.

Syl. Pt. 6, *In the Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) (emphasis added). Moreover, "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). The circuit court carefully considered petitioner's alleged compliance with services but ultimately decided that she had not internalized or implemented the material such that the children could safely be returned to her care. Having reviewed the evidence, we agree that there was no reasonable likelihood that petitioner could correct the conditions of abuse and or neglect in the near future and that termination was necessary for the children's welfare. Therefore, we find no error here.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 12, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: March 16, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton